IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SLEEP MANAGEMENT LLC, <br> d/b/a VIEMED, <br><br> Plaintiff, <br><br> v. <br><br> VYAIRE MEDICAL, INC., <br> d/b/a CAREFUSION RESPIRATORY <br> TECHNOLOGIES <br><br> Defendant. | § § § § § § § § § § § § § § § § Case No._____ |

## ORIGINAL COMPLAINT

Plaintiff Sleep Management, LLC d/b/a VieMed ("VieMed") files this Original Complaint against Defendant Vyaire Medical, Inc. d/b/a CareFusion Respiratory Technologies ("Vyaire"). In support of its claims herein, VieMed respectfully alleges the following:

### I. PARTIES

1. Plaintiff Sleep Management, LLC is a Louisiana limited liability company that maintains a principal place of business at 202 N. Luke Street, Suite A, Lafayette, Louisiana 70506. Sleep Management, LLC operates and does business under the name VieMed.

2. Defendant Vyaire is a Delaware corporate with its principal place of business at 26125 N. Riverwoods Blvd., Mattawa, Illinois 60045. Vyaire operates and does business under various brand names, including CareFusion Respiratory Technologies. Vyaire may be served with process by serving its registered agent Corporate Service Company at 251 Little Falls Drive, Wilmington, Delaware, 19808.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because VieMed and Vyaire are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court has personal jurisdiction over Vyaire because Vyaire continuously engaged in business in the State of Louisiana, including by entering into commercial agreements with VieMed in Louisiana.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2). VieMed is located in this District and a substantial part of the events or omissions giving rise to VieMed's claims occurred in this District.

## III. FACTUAL BACKGROUND

6. VieMed is a high level service provider using best in class technology and equipment to increase quality of life in the homes of patients with respiratory diseases. It provides equipment and home therapy to patients with various respiratory diseases including Chronic Obstructive Pulmonary Disease ("COPD"), Chronic Respiratory failure, and other neuromuscular diseases.

7. In March 2020, VieMed entered into an agreement with the State of Louisiana to help facilitate the acquisition of ventilators and respiratory therapists to address the global coronavirus pandemic. At that time, parts of Louisiana, including New Orleans, were among the hardest hit areas of the pandemic in the United States.

8. In an effort to fulfill its obligations to the State of Louisiana, VieMed solicited a quotation for LTV 1200 ventilators and related equipment from Vyaire. At that time, Vyaire was already a leading manufacturer of ventilators and related equipment, and was manufacturing

about 50 ventilators per week. Vyaire had ambitions to dramatically increase its production to address ever-increasing demand for ventilators during the pandemic.

9. In early March, Vyaire, acting under the tradename CareFusion Respiratory Technologies, submitted Quote No. 2020-86119 (the "Quote") to VieMed for the proposed purchase of 2000 LTV 1200 ventilators and related equipment. When the Quote was prepared, Vyaire was aware that VieMed was acting on behalf of the State of Louisiana and that the ventilators were urgently needed to address the increasing number of COVID-19-related hospitalizations in Louisiana.

10. The Quote contained proposed terms and conditions for the purchase of products from Vyaire. Although the Quote suggested that Vyaire was "experiencing overwhelming demand" for its products, the quote also stated that Vyaire would "allocate the products set forth in this Price Quotation upon customer's submission of a purchase order." **Nothing in the Quote indicated that a deposit or other payment would be required prior to Vyaire's fulfillment of any order or for purposes of assuring that available product would be allocated to VieMed.** Quite to the contrary, the Quote stated that Vyaire would deliver the product "as soon as commercially reasonable after complete execution" of a purchase order. Vyaire's representatives repeatedly acknowledged an "overwhelming demand" for ventilators, but assured VieMed that product was available. Vyaire indicated that the vast majority of the purchase order would be fulfilled in April, with a small amount of additional product delivered in May. Given the ongoing pandemic, it was abundantly clear to both parties that time was of the essence in connection with the delivery of the ventilators.

11. On March 18, 2020, based on Vyaire's representations regarding its ability to deliver product, VieMed submitted a purchase order to Vyaire for 2000 LTV 1200 ventilators

**Original Complaint—Page 3**
503513584 v3 1205869.00015

and related equipment.  The purchase order contemplated a total purchase price of approximately $22.6 million.

12. On March 19, 2020, the day after the purchase order was submitted, Vyaire admitted for the first time to VieMed that it was "not guaranteeing whole orders" and that if Vyaire was unable to fill a whole order it would "refund [VieMed] whatever we didn't fill." Vyaire suggested that "from a prioritization perspective" it would be best for VieMed to pay the full purchase order upfront.  At a minimum, Vyaire insisted that VieMed provide at least a 25% upfront deposit for VieMed to be given "priority" in the allocation of limited ventilator units as they became available.  Vyaire demanded that VieMed immediately deposit $5.6 million with Vyaire and made clear that VieMed would receive no product until it had done so.  Vyaire's representatives stated that if VieMed made the $5.6 million deposit, VieMed had Vyaire's "word & commitment to you, your company Viemed [sic] & the great State of Louisiana to fulfil the ventilator order."

13. VieMed wired a $1.4 million deposit to secure delivery of some product, but expressed concern about wiring any additional funds until it had assurances on the delivery dates for the ventilators.  On March 21, 2020, Vyaire emailed VieMed and advised that it was making allocation decisions for an upcoming shipment.  Vyaire again expressly stated that unless VieMed wired the full $5.6 million, Vyaire would "reallocate" VieMed's portion of the order to another customer.

14. VieMed responded by again expressing hesitation about fronting additional cash without assurances of delivery.  VieMed noted that it would wire the requested additional funds if Vyaire would provide a "ship date."  Otherwise, VieMed made clear that Vyaire should use the $1.4 million deposit on hand to permit allocation of product to VieMed.

15. On March 23, 2020, Vyaire shipped 10 units to VieMed and stated that VieMed would receive no further product unless it increased its deposit to the full $5.6 million. On March 24, 2020, VieMed again expressed a willingness to wire additional funds if Vyaire would simply confirm a shipment date for the ventilators. Vyaire responded by confirming that they were "months out from fully completing any large orders."

16. In response, VieMed requested the existing purchase order for 2000 ventilators be reduced to 500 and that Vyaire accept the previously wired $1.4 million to secure product allocation and immediately begin delivery. Vyaire agreed to reduce VieMed's order to 500 ventilators and to "keep [VieMed] in line" based on the $1.4 million deposit. Vyaire agreed to revisit further production only after the parties had a better idea of a realistic schedule for delivery.

17. Despite repeated requests, Vyaire failed to provide VieMed with any further assurances about the timeline for when ventilators would be allocated and delivered. VieMed made specific requests for updates on March 25, 2020 and March 30, 2020. On March 30, 2020 Vyaire assured VieMed that ventilators would ship that week, but that Vyaire was unsure how many could be allocated to VieMed.

18. On April 2, 2020, in response to yet another inquiry regarding status, Vyaire admitted that it would not have ventilators to allocate that week because production was "still slower" and it was "not coming off the line fast enough for any of us at the moment." To further complicate matters, Vyaire revealed that it had "been awarded a significant piece of [a] government contract." Apparently, at some point in March 2020, Vyaire had signed a $407 million contract to produce 22,000 ventilators for the federal stockpile. This information was not

revealed to VieMed until it was referenced on April 2, 2020, and was not publicly disclosed until April 16, 2020, when Vyaire issued a press release announcing the deal.

19.     Vyaire was apparently aware that the U.S. government contract was imminent when it accepted VieMed's purchase order.  Yet, Vyaire failed to disclose that agreement or the potential impact it might have on Vyaire's ability to meet the requested delivery deadlines.  More shockingly, Vyaire also actively encouraged VieMed to send Vyaire large monetary deposits (which was not Vyaire's normal course business practice) at a time when Vyaire knew it would not be able to timely fulfil purchase orders associated with those deposits.

20.     Indeed, on April 9, 2020, Vyaire admitted to VieMed that it had not shipped any ventilators "this week or last week and we likely won't until next week or the following." Vyaire also advised VieMed that the federal contract came in with "mandated time-lines because of the defense production act," suggesting that the federal contract was taking precedent over all other orders.  Because the federal contract required Vyaire to produce and deliver 22,000 ventilators by the end of June, it guaranteed that the purchase order submitted by VieMed would not be fulfilled in a timely manner.

21.     On April 15, 2020, VieMed again requested an update on the status of delivery. Vyaire still—a full month after the purchase order was executed—could not provide a schedule for delivery.  Vyaire cited to the "tremendous amount of demand" and the "sheer number of orders compared with current production," which Vyaire admitted was only about 250 ventilators a week.  Vyaire also pointed to its commitment to deliver 22,000 ventilators to the federal government by the end of June.  At a production capacity of 250 per week, it would have taken Vyaire 88 weeks or approximately 22 months to complete the federal purchase order.

VieMed had, at the time, received only 10 ventilators, and requested the balance of its $1.4 million cash deposit back.  Vyaire refused.

22.     In May 2020, Vyaire apparently entered into agreement with Brazil and the European Commission, committing to deliver over 30,000 additional ventilators to other countries by the end of June as well.  Vyaire agreed to these significant additional commitments even though it was unable to meet demand for existing and already paid for purchase orders that had been pending for months.

23.     By mid-June, Vyaire had delivered VieMed only 45 ventilators pursuant to the purchase order and still could not give any assurances on whether or when Vyaire would be able to meet its obligations.  Despite Vyaire's admitted inability and/or refusal to fill VieMed's purchase order, Vyaire repeatedly refused to refund any money to VieMed and even began to contend that VieMed remained responsible for the entire $22 million purchase order.

24.     On June 8, 2020, VieMed formally cancelled its purchase order and requested a refund for the remaining amounts left on the $1.4 million deposit.  Given that Vyaire has been unable to comply with even the reduced purchase order after four months, it is clear that Vyaire is unable and unwilling to timely meet its obligations.

## VI.  CAUSES OF ACTION

### COUNT I. - BREACH OF CONTRACT

25.     VieMed re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

26.     VieMed and Vyaire entered into a valid and binding agreement for the purchase of ventilators as described herein.

27. At all relevant times, VieMed has been willing and able to perform its obligations under the agreement.  Vyaire has repudiated its obligations under the agreement, and, despite repeated requests, Vyaire has failed to supply required ventilators in a commercially reasonable manner or as otherwise required by the agreement.  Further, despite Vyaire's ongoing breaches o the agreement, Vyaire has failed and refused to return VieMed's deposit.

28. Vyaire's breaches of the agreement have directly and proximately caused damage to VieMed in excess of the minimum jurisdictional limits of this Court.

## COUNT II. – NEGLIGENT MISREPRESENTATION

29. VieMed re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

30. VieMed and Vyaire entered into a valid and binding agreement as described herein.  Prior to execution of that agreement, Vyaire negligently misrepresented both it ability to provide ventilators and related products and its willingness to do so without an upfront deposit.  Moreover, Vyaire negligently refused to disclose that it had existing and imminent orders for ventilators, including an imminent federal contract, that would make it impossible for Vyaire to fulfill its obligations pursuant to the parties' agreement.  Mere days after it had induced VieMed to agree to the purchase order, Vyaire admitted that it did not have the capacity to perform its obligations as promised.  Knowing that it would be unable to fulfill VieMed's purchase order, Vyaire nevertheless improperly demanded significant financial deposits from VieMed and other customers in order to "prioritize" their orders.  Although Vyaire was aware at the time it was requesting significant deposits from VieMed and others that it had secured a significant contract from the federal government that assured it would be unable to fulfill VieMed's purchase order, Vyaire delayed disclosure of this information until after it obtained $1.4 million from VieMed.

31. VieMed relied on Vyaire's negligent misrepresentations and omissions in deciding to enter into the agreement and in deciding to transfer $1.4 million of funds to Vyaire.

32. Vyaire's negligent misrepresentations and omissions have directly and proximately caused damage to VieMed in excess of the minimum jurisdictional limits of this Court.

## COUNT III. – DECLARATORY RELIEF

33. VieMed re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

34. Pursuant to 28 U.S.C. § 2201, VieMed seeks a declaratory judgment from this Court that VieMed's actions have been consistent with the obligations imposed pursuant to the parties' agreement, that VieMed was and is not required to pay any further funds to Vyaire in connection with the agreement, and that VieMed is entitled to a refund of all amounts currently held by Vyaire as a result of the prior $1.4 million deposit.  VieMed further requests that this Court enter a declaratory judgment confirming that VieMed properly terminated the agreement and that the parties owe no further obligations of any kind to one another in connection with that agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** VieMed requests that this Court grant it judgment against Vyaire and award to VieMed:

(i). VieMed's economic, actual and consequential damages in excess of the minimum jurisdictional limits of this Court;

(ii). A declaratory judgment as outlined above;

(iii). pre-judgment interest as may be provided by law;

  (iv). necessary and reasonable attorneys' fees and costs of court through trial and appeal of this action;

  (v). post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

  (vi). such other and further relief to which VieMed may be entitled.

Dated:  July 29, 2020

             Respectfully submitted;

             */s/ Nadia delaHoussaye*
             _____
             Nadia de la Houssaye (#24777)
             **JONES WALKER LLP**
             600 Jefferson St., Suite 1600
             Lafayette, Louisiana 70502-3408
             Telephone: (337) 593-7600
             Facsimile: (337) 593-7601
             Email:  ndelahoussaye@joneswalker.com

             Beth W. Petronio (pro hac vice forthcoming)
             **K&L GATES LLP**
             1717 Main Street, Suite 2800
             Dallas, TX 75201
             Telephone: (214) 939-5815
             Facsimile: (214) 939-5849
             Email: beth.petronio@klgates.com

             **ATTORNEYS FOR**
             **SLEEP MANAGEMENT, LLC d/b/a VIEMED**